# 25-1860

*To Be Argued By*:
DANIELLE J. MARRYSHOW

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

### Docket No. 25-1860

◄•••►

STATE OF NEW YORK, STATE OF ARIZONA, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF DELAWARE, STATE OF HAWAII, STATE OF ILLINOIS, STATE OF MAINE, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MINNESOTA, STATE OF NEVADA, STATE OF NEW JERSEY, STATE OF NORTH CAROLINA, STATE OF OREGON,

*(Caption continued on inside cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

### REPLY BRIEF FOR DEFENDANTS-APPELLANTS

JAY CLAYTON,
*United States Attorney for the*
*Southern District of New York,*
*Attorney for Defendants-Appellants.*
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2689

DANIELLE J. MARRYSHOW,
BENJAMIN H. TORRANCE,
  *Assistant United States Attorneys,*
    *Of Counsel.*

STATE OF RHODE ISLAND, STATE OF VERMONT, STATE OF WISCONSIN,

*Plaintiffs-Appellees,*

—v.—

DONALD J. TRUMP, in his official capacity as President of the United States, UNITED STATES DEPARTMENT OF THE TREASURY, SCOTT BESSENT, in his official capacity as Secretary of the Treasury,

*Defendants-Appellants.*

## TABLE OF CONTENTS

PAGE

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . .   2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

POINT I—This Appeal Is Not Moot . . . . . . . . . . . . . .   3

POINT II—The Court May Properly Review the
    Underlying Preliminary Injunction Order . . . .   5

POINT III—The States Lack Standing . . . . . . . . . . .   7

POINT IV—The States Did Not Allege Reviewable
    Final Agency Action . . . . . . . . . . . . . . . . . . . . .   13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

ii

PAGE

## TABLE OF AUTHORITIES

*Cases*:

*Aevoe Corp. v. AE Tech Co.*,
727 F.3d 1375 (Fed. Cir. 2013). . . . . . . . . . . . . . . . 6

*AFSCME v. SSA*,
No. 25-1411, 2026 WL 969670
(4th Cir. Apr. 10, 2026). . . . . . . . . . . . . . . . . . 13, 17

*Air Brake Systems, Inc. v. Mineta*,
357 F.3d 632 (6th Cir. 2004) . . . . . . . . . . . . . . . . 16

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997). . . . . . . . . . . . . . . . . . . . . . . . . 4

*Barclift v. Keystone Credit Services, LLC*,
93 F.4th 136 (3d Cir. 2024) . . . . . . . . . . . . . . . . . 9

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024) . . . . . . . . . 11

*Bennett v. Spear*,
520 U.S. 154 (1997). . . . . . . . . . . . . . . . . . . . . . . 15

*Bohnak v. Marsh & Lennan Cos.*,
79 F.4th 276 (2d Cir. 2023) . . . . . . . . . . . . . . . . 8, 9

*City of Hartford v. Chase*,
942 F.2d 130 (2d Cir. 1991) . . . . . . . . . . . . . . . . . 7

*Do No Harm v. Pfizer Inc.*,
126 F.4th 109 (2d Cir. 2025) . . . . . . . . . . . . . . . . 9

*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024). . . . . . . . . . . . . . . . . . . . . . . 11

iii

PAGE

*Gest v. Bradbury,*
    443 F.3d 1177 (9th Cir. 2006) . . . . . . . . . . . . . . 11

*Godinez v. Lane,*
    733 F.2d 1250 (7th Cir. 1984) . . . . . . . . . . . . . . . 6

*Gon v. First State Insurance Co.,*
    871 F.2d 863 (9th Cir. 1989) . . . . . . . . . . . . . . . 6

*Hassoun v. Searls,*
    976 F.3d 121 (2d Cir. 2020) . . . . . . . . . . . . . . . . 4

*Katz v. Pershing, LLC,*
    672 F.3d 64 (1st Cir. 2012). . . . . . . . . . . . . . . . 12

*Lujan v. National Wildlife Federation,*
    497 U.S. 871 (1990). . . . . . . . . . . . . . . . . . . . . 13, 14

*McMorris v. Carlos Lopez & Associates, LLC,*
    995 F.3d 295 (2d Cir. 2021) . . . . . . . . . . . . . . . 12

*Norton v. Sam's Club,*
    145 F.3d 114 (2d Cir. 1998) . . . . . . . . . . . . . . . 14

*Paskar v. U.S. Department of Transportation,*
    714 F.3d 90 (2d Cir. 2013) . . . . . . . . . . . . . . . . 17

*Reilly v. Ceridian Corp.,*
    664 F.3d 38 (3d Cir. 2011) . . . . . . . . . . . . . . . . 12

*Russman v. Board of Education of Enlarged City
    School District of City of Watervliet,*
    260 F.3d 114 (2d Cir. 2001) . . . . . . . . . . . . . . . . 4

*Salazar v. National Basketball Association,*
    118 F.4th 533 (2d Cir. 2024) . . . . . . . . . . . 8, 9, 10

iv

PAGE

*Srour v. New York City*,
117 F.4th 72 (2d Cir. 2024) . . . . . . . . . . . . . . . . . . 5

*Staehr v. Hartford Financial Services Group, Inc.*,
547 F.3d 406 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . 4

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021). . . . . . . . . . . . . . . . . . . . . . . . . 10

*U.S. Army Corps of Engineers v. Hawkes Co.*,
578 U.S. 590 (2016). . . . . . . . . . . . . . . . . . . . . 15, 16

*Venetian Casino Resort, LLC v. EEOC*,
530 F.3d 925 (D.C. Cir. 2008). . . . . . . . . . . . . . . . 17

*Statutes*:

5 U.S.C. § 551(13). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. § 1292(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . 5

*Other Authorities*:

Executive Order 14,158 . . . . . . . . . . . . . . . . . . . . . . . 3

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket No. 25-1860

---

STATE OF NEW YORK, STATE OF ARIZONA, STATE OF
CALIFORNIA, STATE OF COLORADO, STATE OF
CONNECTICUT, STATE OF DELAWARE, STATE OF HAWAII,
STATE OF ILLINOIS, STATE OF MAINE, STATE OF
MARYLAND, COMMONWEALTH OF MASSACHUSETTS,
STATE OF MINNESOTA, STATE OF NEVADA, STATE OF
NEW JERSEY, STATE OF NORTH CAROLINA, STATE OF
OREGON, STATE OF RHODE ISLAND, STATE OF
VERMONT, STATE OF WISCONSIN,

*Plaintiffs-Appellees,*

—v.—

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS
PRESIDENT OF THE UNITED STATES, UNITED STATES
DEPARTMENT OF THE TREASURY, SCOTT BESSENT, IN
HIS OFFICIAL CAPACITY AS SECRETARY OF THE
TREASURY,

*Defendants-Appellants.*

---

## REPLY BRIEF FOR DEFENDANTS-APPELLANTS

---

2

## Preliminary Statement

The states that brought this action allege they have a constitutionally cognizable injury based on supposedly unauthorized access to information, but the only access at issue was by authorized Treasury employees. Even on the states' telling of the facts, no information was disclosed outside the government. There was, in short, no unauthorized disclosure of sensitive information to a third party—and accordingly, under the precedents of this Court and the Supreme Court, no concrete injury suffered by the states. And while the states allege a risk of future harm along those lines, that theory rests on a speculative and attenuated chain of events. None of the states' arguments are enough to support their standing to bring this lawsuit.

If they did have standing, the states still could not proceed under the Administrative Procedure Act because they have not alleged a challengeable final agency action. The states do not even attempt to respond to the government's explanation that the Access Plan at issue in this appeal is not an "agency action" at all (regardless of its finality). And their arguments for finality depend on characterizing clearly interim steps—like delineating a project's scope, or hiring employees to begin work and giving them access to agency resources—as "final," when the agency's decisionmaking was plainly incomplete. Moreover, the states assert that the Access Plan had legal consequences, not because it affected the states themselves, but because it gave Treasury's own employees rights of access to information—a circular chain of reasoning that would bring every hiring

3

decision within the scope of APA review. At bottom, the states' suit, and the district court's injunction, invite a dramatic expansion of judicial oversight of routine agency operations. The APA does not permit that, and accordingly this Court should vacate the district court's injunctive order.

## A R G U M E N T

### POINT I

### This Appeal Is Not Moot

At the outset, this appeal is not moot. While the states argue (Brief for State Appellees ("States Br.") 23-25) that DOGE was disbanded in November 2025, that is factually incorrect. DOGE is a temporary organization created by Executive Order 14,158, and under the terms of the EO, it will not terminate until July 4, 2026. *See* Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025). Moreover, the preliminary injunction is expansive and amorphous; it applies to multiple undefined categories of people. The Department of the Treasury remains restrained from granting access "to any Treasury Department payment record, payment systems, or any other data systems maintained by the Treasury Department containing personally identifiable information and/or confidential financial information of payees . . . to any employee, officer or contractor employed or affiliated with the United States DOGE Service, DOGE, or the DOGE Team established at the Treasury Department" without complying with the restrictions imposed by the

4

district court. (SPA 101-02). Further, the district court's May 2025 order modifies the preliminary injunction as to specific Treasury employees who continue to fall under its ambit. (SPA 102). Accordingly, the preliminary injunction continues to have real legal effect.

Indeed, the states have no sound basis for their contention of mootness, which is made solely on the basis of news articles. Those articles may not be judicially noticed for the "truth of their contents." *Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). And the states proffer no evidence from any source with actual knowledge to support their assertion that DOGE no longer exists, nor do they argue any legal basis for that conclusion.

However, if the Court were to dismiss this appeal as moot, it should also vacate the preliminary injunction and direct the district court to dismiss this action. "When a case becomes moot on appeal, '[t]he established practice . . . in the federal system . . . is to reverse or vacate the judgment below and remand with a direction to dismiss.'" *Hassoun v. Searls*, 976 F.3d 121, 130 (2d Cir. 2020) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997)). While an appellant's actions can forfeit the remedy of vacatur "if the appellant voluntarily acts with an 'inten[t] that the appeal become moot[,]' . . . 'conduct that is voluntary in the sense of being non-accidental, but which is entirely unrelated to the lawsuit, should not preclude [this Court's vacatur of] the decision below.'" *Id.* at 131 (quoting *Russman v. Board of Education of Enlarged City School District of City of Watervliet*, 260 F.3d 114,

5

122 (2d Cir. 2001)). But here, there is "no indication" that DOGE's structure was changed "to intentionally moot this case, or even that [the] action was related to this lawsuit." *Srour v. New York City*, 117 F.4th 72, 86 (2d Cir. 2024). Thus, if the states are correct that DOGE no longer exists and that renders this case moot, the action should be dismissed.

In a footnote, the states appear to try to avoid this conclusion by asserting their complaint "was not limited to members of the DOGE team, and instead sought to limit any temporary government employee outside of Treasury from accessing BFS systems, so it continues to present a justiciable controversy." (States Br. 23 n.8). But the only temporary government employees that the states allege had improper access to BFS systems were members of the DOGE team (JA 77-153), and their conclusory reference to "any government employee" in the prayer for relief they now cite (JA 91) cannot overcome that deficiency. Thus, to the extent the appeal concerning employees affiliated with DOGE is moot, the whole case is moot, and the Court should direct the district court to dismiss it.

## POINT II

### The Court May Properly Review the Underlying Preliminary Injunction Order

Nor are the states correct (States Br. 35-36) that the government's appeal does not encompass the district court's preliminary injunction order. Under 28 U.S.C. § 1292(a)(1), the courts of appeals have jurisdiction to review "[i]nterlocutory orders of the district courts ... modifying ... injunctions." Although the

6

government did not immediately appeal the original February 21, 2025, injunctive order, it made two motions in the following months that resulted in two modifications of the injunction (JA 26, 29; SPA 65-96), and the government timely appealed after the latest modification order. That is sufficient to give this Court jurisdiction to review the original order as well as the modifications.

When a district court modifies a preliminary injunction but "the original preliminary injunction remains in full force and effect" as modified, "the terms of that original preliminary injunction are before [the court of appeals] under [its] plenary power of review." *Godinez v. Lane*, 733 F.2d 1250, 1255-56 (7th Cir. 1984). That rule may not apply if the grounds for modification were based on a "separate and distinct issue" from those presented in the original injunction—but when the modification is based on "evidence [that] concerned the very subject matter of the preliminary injunction," as it does in this case, the modification and the original order "are inseparable, and must be read in conjunction with each other," and therefore an appeal from the modification order makes the original reviewable as well. *Id.*; *accord Gon v. First State Insurance Co.*, 871 F.2d 863, 866-67 (9th Cir. 1989) ("when a motion to modify an injunction is granted . . . [the] modification may be so fundamental to the original injunction, or may otherwise present issues so inextricable from the validity of the original injunction, that review must include the whole package"); *Aevoe Corp. v. AE Tech Co.*, 727 F.3d 1375, 1382 (Fed. Cir. 2013) ("a modification of the original injunction . . . in effect, would reset the time for appeal of the

7

injunction"); *cf. City of Hartford v. Chase*, 942 F.2d 130, 134 (2d Cir. 1991) ("[B]ecause the Confidentiality Order granted injunctive relief, and the three later orders modified that injunction, an appeal from the later orders is permissible under 28 U.S.C. § 1292(a)(1).").

The modification orders in this case meet those criteria. Those two orders left the February injunction in place, but effected changes based on the same basic subject matter, namely, which employees could access the BFS payment systems. The April order allowed one additional Treasury employee to have access to the systems, and the May order extended that ruling to any employee who complied with certain conditions. (SPA 65-103). Because those orders cannot be read without considering the February injunction, which they left in place as modified, all three orders are properly before this Court on appeal.

## POINT III

### The States Lack Standing

As the government explained in its opening brief, the states do not have Article III standing to bring their claims because they have failed to allege a cognizable injury in fact. (Brief for Defendants-Appellants ("Gov't Br.") 18-28). The district court identified two harms: a "past harm in the unauthorized disclosure of the States' confidential financial information to the DOGE Team," and a "risk of future harm, in the risk of exposure to [the states'] confidential information to officials of USDS/DOGE and to the public through

8

potential hacking." (SPA 26). Neither of these alleged harms is sufficient to establish the states' standing.

The states rely on cases holding that the unauthorized disclosure of private information to a third party is sufficient for the purposes of standing. (States Br. 27-30 (citing *Bohnak v. Marsh & Lennan Cos.*, 79 F.4th 276 (2d Cir. 2023), and *Salazar v. National Basketball Association*, 118 F.4th 533 (2d Cir. 2024)). But DOGE's access to BFS systems was authorized— as the government explained, it is entirely legitimate for new employees to be granted access under established authorities. (Gov't Br. 21-23). Indeed, it is necessary for the government to continue functioning.

Even if the access were not authorized, the states have not alleged that any information was disclosed to a third party—that is, to anyone outside of the government. Members of the DOGE team were Treasury employees or detailees. (Gov't Br. 6-7, 13, 25; JA 220-221, 224, 230-235, 252-253). The states have therefore not established that, by granting members of the DOGE team access to BFS systems, there was any disclosure to anyone outside the Treasury Department, much less a third party. (States Br. 29).[1] Regardless,

---

[1] The states point to their own complaint to argue that DOGE team members were not in fact Treasury employees, but instead employees of the Executive Office of the President. (States Br. 29 (citing JA 77-79)). But a plaintiff cannot rest on allegations alone to demonstrate standing when seeking a preliminary injunction; instead, the states had the "burden to

9

it is undisputed that there was no disclosure of information outside the government. The states merely allege "harm from disclosures that remain functionally internal," and those harms "are not closely related to those stemming from public ones." *Barclift v. Keystone Credit Services, LLC*, 93 F.4th 136, 146 (3d Cir. 2024), *cert. denied*, 145 S. Ct. 169 (2024). The states have therefore failed to demonstrate any harm that "bears a relationship to an injury with a 'close historical or common-law analogue.'" *Bohnak*, 79 F.4th at 286. To the contrary, the common-law analogues in *Bohnak* and *Salazar* both depended on the third-party nature of the disclosure, *Bohnak*, 79 F.4th at 280, 285-86 (unauthorized third party accessed plaintiff's name and Social Security number through targeted data breach of her employer); *Salazar*, 118 F.4th at 542 (unauthorized disclosure of personally identifiable information to third party pursuant to contract without plaintiff's consent)—which, crucially, is absent here (Gov't Br. 23-25).[2] In short, unlike in *Bohnak* and *Salazar*,

———————

demonstrate standing" by proffering evidence of specific facts to establish standing. *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 119 (2d Cir. 2025). The states have failed to do so, or otherwise rebut the government's uncontested evidence that the DOGE team were Treasury employees.

[2] The states assert that in *Salazar*, there was no "evidence that the plaintiff's data was stolen or even that the disclosure went beyond the terms of the defendant's contractual agreement with the third party." (States Br. 28 (citing 118 F.4th at 537-39)). But they

10

there is no close relationship to a traditional common-law analogue here, and accordingly no standing, because the states have merely alleged disclosure within the government. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 434 n.6 (2021) (rejecting plaintiffs' argument that internal publications were sufficiently close to the traditional defamation tort to qualify for Article III standing).

Nor is the alleged increased risk of future disclosure sufficient to confer standing. As the government explained in its opening brief, the district court erred in determining that any possible exposure of the states' confidential information to "officials of USDS/ DOGE and to the public through potential hacking" is a cognizable injury because the chain of causation that would lead to public disclosure is too attenuated. (Gov't Br. 25-28). In response, the states rely, first, on a generalized assertion of the alleged cybersecurity risks associated with the access provided to DOGE team members—an assertion that is far too speculative and vague to constitute either "imminent" or

---

do not explain why that is relevant: a harm is not made lawful simply because it occurs under a contractual arrangement. The salient issue in *Salazar* was that the parties to an agreement engaged in conduct that was "closely related to the public disclosure of private facts analog" because it "disclosed" the plaintiff's private information to "an unauthorized third party." 118 F.4th at 542.

11

"concrete" harm. *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 381 (2024) (quotation marks omitted).

Second, the states point to a single email sent by a DOGE team member "with a spreadsheet containing [low risk] PII to two United States General Services Administration officials" (JA 253-54) and argue, based on two district court decisions, that they can demonstrate sufficiently imminent injury because "other information held by the defendant has already been compromised." (States Br. 33).[3] But even the states' own authorities require that "[w]hen plaintiffs seek injunctive relief, 'they must demonstrate that they are realistically threatened by a *repetition* of the violation.'" *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 881 (N.D. Cal. 2024) (quoting *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006); quotation marks omitted). The states have made no such showing here. In any event, "[w]here plaintiffs fail to present evidence or make any allegations that an unauthorized third party

———————

[3] The states also point to screenshots of information that was sent by a DOGE team member in support of their standing argument. (States Br. 33). But that information was hardly "compromised"—those screenshots were sent to another Treasury DOGE team member for official purposes. (JA 138 ("I understand that Mr. Elez had provided Mr. Krause with updates about his work, which may have occasionally included screenshots of payment systems data or records.")).

12

*purposefully* obtained the plaintiffs' data, courts have regularly held that the risk of future identity theft is too speculative to support Article III standing." *McMorris v. Carlos Lopez & Associates, LLC*, 995 F.3d 295, 301 (2d Cir. 2021) (emphasis added). The states have not, as they must, alleged that their own sensitive data was purposely disclosed to or misused by an unauthorized third party; indeed, the only disclosures they can identify were entirely within the federal government, and thus the states have not alleged any third-party disclosure at all. Other courts of appeals have held that where, as here, a plaintiff falls short of alleging that their own sensitive data (as opposed to data of other persons) was improperly disclosed to a third party, the alleged harm is too speculative to confer standing on a plaintiff. *Katz v. Pershing, LLC*, 672 F.3d 64, 80 (1st Cir. 2012) ("This omission is fatal: because she does not identify any incident in which her data has ever been accessed by an unauthorized person, she cannot satisfy Article III's requirement of actual or impending injury."); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 45 (3d Cir. 2011) ("In data breach cases where no misuse is alleged, however, there has been no injury—indeed, no change in the status quo. Here, Appellants' credit card statements are exactly the same today as they would have been had Ceridian's database never been hacked."). Because the states have not alleged that their sensitive data was

13

improperly disclosed to a third party, they have not asserted a cognizable injury in fact for standing purposes.[4]

## POINT IV

### The States Did Not Allege Reviewable Final Agency Action

Even if the states did have Article III standing to bring this lawsuit, the Access Plan does not constitute final agency action that can be properly challenged under the APA. The APA does not permit "general judicial review of [an agency's] day-to-day operations." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 899 (1990). And as the government explained in its opening brief, the Access Plan is, at its core, a series of personnel decisions related to granting individual employees access to agency systems.[5] (Gov't Br. 29-32).

---

[4]  The Fourth Circuit has recently held that substantially similar plaintiffs did have Article III standing to sue, although it ultimately held that injunctive relief was not warranted. *See AFSCME v.* SSA, No. 25-1411, 2026 WL 969670, at *3-5 (4th Cir. Apr. 10, 2026) (en banc). For the reasons stated above, the government respectfully submits that AFSCME's standing analysis was incorrect.

[5]  The states argue that this Court should affirm the district court's determination that the Engagement Plan constitutes final agency action, but that appears to be an error. (States Br. 36-42). The district court determined that the Access Plan—namely "the

14

Because the Access Plan "is not an 'agency action' within the meaning of § 702, much less a 'final agency action' within the meaning of § 704," this court should vacate the preliminary injunction. *National Wildlife Federation*, 497 U.S. at 890.

As an initial matter, the states wholly fail to respond to the government's arguments that the Access Plan does not constitute "agency action" at all because it is not a "rule, order, license, sanction, relief, or the equivalent." 5 U.S.C. § 551(13). As the government previously explained, the Access Plan is not an "order" as that term is defined in the APA; rather, it loosely describes steps taken by a government agency as part of its process in anticipation of certain decisionmaking—more akin to a broadly defined "program" or "initiative" than to the type of agency action courts have held to be reviewable under the APA. (Gov't Br. 29-32). The states have not offered (and have therefore forfeited) any counterargument. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered [forfeited] and normally will not be addressed

---

decision by the Treasury Department to constitute a DOGE Team with individuals from outside the agency, who were employed pursuant to temporary hiring authorities, and provide those individuals with unprecedented access to the BFS payments systems pursuant to" the Engagement Plan—was the relevant final agency action. (SPA 44; Gov't Br. 7, 12 (defining terms)).

15

on appeal."). This court need not go further and should vacate the preliminary injunction on the ground that the Access Plan is not challengeable agency action under the APA.

But even if the Access Plan were somehow agency action, it is not "final" agency action. (Gov't Br. 32-33). "[T]wo conditions must be satisfied for agency action to be 'final': First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (quotation marks omitted). The states' challenge to the Access Plan does not satisfy either prong of the analysis.

First, the states argue that the Access Plan is final agency action because, by the time that this action was filed, certain interim steps—determining the Engagement Plan's "scope," hiring certain employees, and giving them needed access or source code—"had been finalized." (States Br. 37-38). But any decisionmaking process can be broken down into steps, each of which is completed at some point; the argument that that completion constitutes "final" action means that requirement has no meaning. The Access Plan did not "consummat[e] . . . the agency's decisionmaking process." *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quotation marks omitted). Rather, it contributed to an ongoing decisionmaking process by hiring personnel and granting them needed access to information. Put differently, the Access Plan

16

was merely a method to begin the process of allowing the Treasury DOGE Team to "identify data gaps that, if resolved, would make the system . . . work more efficiently and securely," as well as "opportunities to advance payment integrity and fraud reduction goals." (JA 130, 138). Because the Access Plan was, at best, "interlocutory" in nature, it does not qualify as final agency action under the APA. *Hawkes*, 578 U.S. at 597.

Second, the states argue that the Access Plan meets the second *Bennett* prong because it "necessarily determined the rights of the DOGE team members to access sensitive BFS systems and data," and "created legal consequences for Treasury and the States" by failing to ensure the protection of the states' confidential data. (States Br. 39-42). But "[a]n agency's determination of 'rights or obligations' generally stems from an agency action that is directly binding *on the party seeking review*, such as an administrative adjudication . . . or legislative rulemaking." *Air Brake Systems, Inc. v. Mineta*, 357 F.3d 632, 641 (6th Cir. 2004) (emphasis added). The states point to no authority holding that a government decision to give its own employees "rights" appurtenant to their own employment constitutes final agency action; indeed, under that test, any government hiring or promotion, or decision to grant access to any record would be reviewable under the APA, contrary to established law. And even if the "rights or obligations" of the DOGE team were relevant to the analysis of determining whether the Access Plan was final agency action, that would still be insufficient; those are not the sorts of "rights or obligations" that render agency action final. The Access Plan merely

17

allowed members of the DOGE team access to agency systems as a part of their employment; it did not "impose an obligation, deny a right, or fix some legal relationship." *Paskar v. U.S. Department of Transportation*, 714 F.3d 90, 96 (2d Cir. 2013).

Nor is it correct that "an agency's disclosure of confidential information"—standing alone—"constitutes a final agency action." (States Br. 40). As the states now appear to concede, the case on which they primarily rely for that proposition involved a "policy permitting disclosure of confidential information." (States Br. 40 (describing *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925 (D.C. Cir. 2008)). As the Fourth Circuit held, an established written agency policy has "crucial features" that distinguish it from a case like this, where no such policy exists. *AFT v. Bessent*, 152 F.4th 162, 175 (4th Cir. 2025), *abrogated on other grounds*, *AFSCME v. SSA*, No. 25-1411, 2026 WL 969670 (4th Cir. Apr. 10, 2026) (en banc). The states make no effort to explain why the Fourth Circuit and the government are wrong in explaining why *Venetian Casino* is inapposite.

The district court's holding, if affirmed, has far-reaching consequences beyond this case. If a series of personnel decisions that might have some adverse impact on a plaintiff constitutes final agency action, courts will necessarily find themselves mired in the day-to-day management choices of an agency. While the states argue that this concern is unfounded (States Br. 42), the district court has recognized this reality. In its final order modifying the preliminary injunction, the district court acknowledged that "[s]hould the

18

preliminary injunction remain in place unaltered, the Government would be required to obtain judicial approval each time there is turnover in the ranks of the DOGE Team," and modified the order accordingly because "there is little utility in having [the district court] function as Treasury's de facto human resources officer each time a new team member is onboarded." (SPA 100-01). But while the district court recognized and attempted to rectify this issue piecemeal in this case, those modifications do not address the fundamental problem of a federal court adjudicating the details of an agency's hiring and onboarding decisions. This Court should reject the states' attempt to use the APA to seek judicial oversight of the minutia of the operations of government agencies, and hold that the Access Plan does not constitute final agency action as a matter of law.

19

## CONCLUSION

**The district court's order granting a preliminary injunction should be vacated.**

Dated:    New York, New York
              April 27, 2026

              Respectfully submitted,

              JAY CLAYTON,
              *United States Attorney for the*
              *Southern District of New York,*
              *Attorney for Defendants-Appellants.*

DANIELLE J. MARRYSHOW,
BENJAMIN H. TORRANCE,
     *Assistant United States Attorneys,*
              *Of Counsel.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 4,100 words in this brief.

JAY CLAYTON,
*United States Attorney for the*
*Southern District of New York*

By: DANIELLE J. MARRYSHOW,
*Assistant United States Attorney*